[Cite as *State v. Hudson*, 2017-Ohio-645.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 15 MA 0134 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| FRANKIE HUDSON JR., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from the Court of
                                 Common Pleas of Mahoning County,
                                 Ohio
                                 Case No. 2013 CR 828

JUDGMENT:                        Affirmed and Remanded.

APPEARANCES:

For Plaintiff-Appellee:          Atty. Paul J. Gains
                                 Mahoning County Prosecutor
                                 Atty. Ralph M. Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio  44503

For Defendant-Appellant:         Atty. Frank Cassese
                                 Betras, Kopp & Harshman LLC
                                 6630 Seville Drive
                                 Canfield, Ohio  44406

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                 Dated:  February 22, 2017

ROBB, P.J.

{¶1}   Defendant-Appellant Frankie Hudson Jr. appeals the judgment of the Mahoning County Common Pleas Court finding him guilty of having a weapon while under disability and imposing a maximum sentence of 36 months in prison.  Appellant contends there was insufficient evidence to support the conviction and the trial court's decision was contrary to the manifest weight of the evidence.   In submitting supplemental authority, he contends a juvenile adjudication cannot be used as an element of the offense.  Regarding his sentence, Appellant argues the court failed to make findings under R.C. 2929.12 and failed to provide support for a maximum sentence.   As these arguments are without merit, Appellant's conviction and sentence are affirmed.   However, the matter is remanded to the trial court with instructions to issue a nunc pro tunc entry as the consecutive sentence findings made at the sentencing hearing were not set forth in the sentencing entry and there is a clerical error in reciting the number of months imposed as Appellant's sentence.

STATEMENT OF THE CASE

{¶2}   On September 16, 2011, seventeen-year-old Joshua Davis was shot four times which caused his death.  Appellant was indicted for:  aggravated murder in violation of R.C. 2903.01(B) for purposely causing the death in connection with an aggravated robbery; aggravated robbery in violation of R.C. 2911.01(A)(1), which involves a deadly weapon; accompanying firearm specifications; and having a weapon while under disability in violation of R.C. 2923.13(A)(2) (due to a prior juvenile adjudication for an offense that would be a felony offense of violence if committed by an adult).  Prior to the jury trial, Appellant waived the right to trial by jury on the charge of having a weapon while under disability and agreed to have this count tried to the bench.

{¶3}   The victim's mother testified she provided her son with $1,000 in the hours prior to his death so he could purchase a vehicle.  (Tr. 228).  She heard the victim take a phone call and then exit the house; she soon heard gunshots and found her son lying on the front porch.  (Tr. 229-232).  The victim had been shot four times: one shot was fired into each upper thigh from very close range; one shot was fired

into the victim's face; and one shot was fired into the top of his shoulder from a downward angle. (Tr. 596-607).

{¶4} A person on a bicycle saw three to four people run from the porch after the shooting. (Tr. 250, 254). Another witness saw three people alight from the porch after the shooting. (Tr. 261). Police recovered two spent shell casings from the front porch: a 9mm casing and a .40 caliber casing, which could not have been fired from the same gun. (Tr. 287, 478). Bags of marijuana and a scale were recovered from the scene. (Tr. 272). The money was not recovered. (Tr. 232). The first responding officer noticed the victim's hands were in his coat pockets. (Tr. 273).

{¶5} The state presented the testimony of Appellant's half-brother, who testified that he, Appellant, Lamar Reese,[1] and two other acquaintances planned to steal marijuana from the victim. The brother was present the day before when another friend had a disagreement with the victim over a marijuana sale that "fell through." (Tr. 339-340). The brother said he called the victim to smooth things over and later called to arrange a marijuana purchase. He also drove the group to the victim's house. (Tr. 344). He testified he and Appellant were going to take possession of the marijuana and then merely leave without paying; he said guns were not supposed to be involved. (Tr. 346-347). Yet, he said he carried his mother's 9mm, Appellant carried a .40 caliber Glock, and Lamar Reese carried a 9mm rifle. (Tr. 345-346). The brother reported it was his .40 caliber firearm Appellant carried that night. (Tr. 380-381).

{¶6} According to the brother, the victim led him and Appellant through his house to the garage in order to weigh the marijuana. The brother testified that when they exited the house onto the front porch, Lamar Reese was standing by the porch with his gun cocked. (Tr. 350-351). The brother testified the victim moved his hands in his pockets at which point Appellant pointed his gun at the victim as well. (Tr. 351, 353). The brother said he backed away and ran as he heard the first gunshot. (Tr. 355). He hid his gun in a bush and recovered it later. (Tr. 357, 360). The brother stated Appellant told him he hid his gun on top of a building. (Tr. 361).

---

[1] Appellant was charged in a joint indictment with Lamar Reese, and the cases were later severed. On August 7, 2014, Lamar Reese was convicted of aggravated murder, aggravated robbery, and a firearm specification.

**{¶7}** The brother initially denied any involvement but decided to provide his statement after Appellant incriminated him while denying involvement. More than a year after the incident, Appellant gave a statement to police that his brother and three others plotted to rob the victim while they were all at a party. (Tr. 518). When the four left, Appellant said he went home and did not participate. (Tr. 520). He said two guns were passed around: a .40 caliber and "a 9 by 19  9mm, kind of sawed off looking machine gun type of 9mm." (Tr. 519). Appellant reported to police that he handled the .40 caliber firearm at the party. (Tr. 519, 529). Appellant also advised that his brother told him about the shooting the next day. (Tr. 521). Upon learning of Appellant's new statement, the brother agreed to testify against Appellant and Lamar Reese. (Tr. 367-369).

**{¶8}** The jury found Appellant not guilty of aggravated murder, the lesser included offense of murder, and aggravated robbery. The court then addressed the charge of having a weapon while under disability. The defense stipulated to the state's presentation of a certified copy of Appellant's adjudication as a juvenile for felonious assault. (Tr. 746-747). The trial court found Appellant guilty of having a weapon while under disability, which is a third-degree felony. *See* R.C. 2923.13(A)(2),(B); (J.E. 6/26/16). Appellant was sentenced to 36 months in prison, which is the maximum sentence for this type of third-degree felony. *See* R.C. 2929.14(A)(3)(b); (J.E. 7/15/16).

**{¶9}** Appellant sets forth two assignments of error on appeal. The first assignment of error contests the maximum sentence and will be discussed last. Appellant's second assignment of error contains arguments on both the sufficiency and the weight of the evidence. As these concepts are distinct, they will be addressed separately. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.")

## SUFFICIENCY OF THE EVIDENCE

**{¶10}** On the topic of sufficiency, Appellant's second assignment of error provides in pertinent part:

"Evidence presented is insufficient * * * to support a conviction of Having Weapons While Under Disability * * *."

{¶11} Whether the evidence is legally sufficient to sustain a conviction is a question of law. *Thompkins*, 78 Ohio St.3d at 386. It is a test of adequacy. *Id.* An evaluation of a witness's credibility is not involved in sufficiency review. *State v. Yarbrough*, 95 Ohio St.3d 227, 240, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Rather, the question is whether the evidence, *if believed*, is sufficient. *See id.* at ¶ 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *See Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶12} In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

{¶13} The statute defining the offense of having a weapon while under disability provides in part that a person, who has been adjudicated a delinquent child for an offense that would be a felony offense of violence if committed by an adult, shall not "knowingly acquire, have, carry, or use any firearm * * *." R.C. 2923.13(A)(2). The parties stipulated to the admission of a certified copy of the judgment entry establishing Appellant's prior adjudication, and Appellant does not take issue with the element involving a qualifying prior juvenile adjudication. Rather, he contends he did not possess a firearm.

{¶14} Appellant's brother said he owned the .40 caliber firearm Appellant carried to the victim's house. Ownership is not required to prove a defendant did "acquire, have, carry, or use any firearm." *See* R.C. 2923.13(A)(2); *State v. Tucker*, 9th Dist. No. 13CA010339, 2016-Ohio-1353, ¶ 21. Actual possession can be established by ownership or physical control. *State v. Riley*, 7th Dist. No. 13 MA 180, 2015-Ohio-94, ¶ 25; *State v. Haslam*, 7th Dist. No. 08 MO 3, 2009-Ohio-1663, ¶ 41. Although the word possess is not used in the statute, to "have" a firearm the

defendant must have had actual or constructive possession. *Haslam*, 7th Dist. No. 08 MO 3, 2009-Ohio-1663, ¶ 41. When "possess" is used in a statute, it means to have control over a thing. *See* R.C. 2925.01(K).

**{¶15}** Construing the evidence in the light most favorable to the state, a rational person could conclude Appellant exercised control over a firearm. Appellant acknowledges there was testimony that he carried a .40 caliber firearm to the victim's house. There was also testimony Appellant brandished the firearm by pointing it at the victim. The presentation of this sufficiency argument seems to depend on Appellant's suggestion that this testimony could not be utilized by the trial court in determining the charge of having a weapon while under disability because the jury acquitted him of aggravated murder, murder, and aggravated robbery during which he allegedly carried and/or used a firearm.

**{¶16}** Appellant does not specify an argument as to inconsistent verdicts or cite law on the premise. Rather, he refers to the lack of credible evidence on his possession of a gun. As aforementioned, credibility is a question concerning the weight, rather than the sufficiency, of the evidence. *Yarbrough*, 95 Ohio St.3d 227 at ¶ 79; *Murphy*, 91 Ohio St.3d at 543. (We review the weight of the evidence in the next section.)

**{¶17}** Notably, the various counts in a multi-count indictment are not interdependent and "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Gapen*, 104 Ohio St.3d 358, 381, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 138 (2004). *See also United States v. Powell*, 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("Consistency in the verdict is not necessary.").[2] Regardless, Appellant chose to have this offense tried by the court. The court is its own fact-finder in such a situation. During a single prosecution for multiple offenses, a court is not prohibited from finding a defendant guilty of having a weapon while under disability after a jury finds him not guilty of certain offenses during which he

---

[2] This court has ruled that there is no prohibition on inconsistent verdicts where the guilty verdict for an offense is claimed to be inconsistent with an acquittal on the firearm specification. *State v. Given*, 7th Dist. No. 15 MA 0108, 2016-Ohio-4746, ¶ 33-34, applying *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976) (where a jury convicts a defendant of aggravated murder in the course of an aggravated robbery but acquits him of a death specification for identical behavior, the general verdict is not invalid).

was said to have possessed a gun. *State v. Stevens*, 8th Dist. No. 103516, 2016-Ohio-4699, ¶ 18-20; *State v. Smith*, 10th Dist. No. 14AP-33, 2014-Ohio-5443, ¶ 32-37; *State v. Morris*, 8th Dist. No. 94923, 2011-Ohio-824, ¶ 12; *State v. Brown*, 8th Dist. No. 89754, 2008-Ohio-1722, ¶ 27. *See also State v. Wellman*, 10th Dist. No. 14AP-976, 2015-Ohio-4875, ¶ 6 (issue preclusion does not prevent the trial court from finding defendant guilty of having a weapon while under disability after a jury found him not guilty of felonious assault due to a shooting).

**{¶18}** In any event, each offense had its own set of elements, and the court's judgment is not inconsistent with the jury's verdict. Merely because the jury acquitted Appellant does not mean the jury believed Appellant's statement to police that he did not travel with the others to the victim's house that night. Likewise, merely because the jury disbelieved portions of the story told by Appellant's brother does not mean the entire story must be disbelieved.

**{¶19}** We note the jury was not called upon to make a decision on the offense of robbery, which entails having a deadly weapon on or about the offender's person or under the offender's control while attempting or committing a theft offense or in fleeing immediately thereafter. *See* R.C. 2911.02(A)(1). We also note Appellant's brief fails to mention his own statement admitting he handled the .40 caliber weapon when the guns were passed around at the gathering prior to the shooting. This fact was presented independent from the brother's allegations concerning the aggravated robbery and resulting murder.

**{¶20}** The aggravated robbery charge required the defendant to have a deadly weapon on or about his person or under his control *and* to *display, brandish, indicate he possessed, or use* the weapon in committing or attempting to commit a theft offense or in fleeing immediately thereafter. R.C. 2911.01(A)(1). The charge of having a weapon while under disability required the defendant, who is under a disability, to knowingly acquire, have, carry, or use the weapon. R.C. 2923.13(A)(2). "Use" was only one of the modes of possession available to constitute the offense; evidence Appellant acquired, had, or carried the firearm would also render him guilty of the offense of having a weapon while under disability. As aforementioned, there was evidence Appellant carried a gun to the victim's residence that night.

**{¶21}** There was other evidence in the form of his own statement to police; he admitted he handled a gun at a gathering earlier that night. The "have" element in R.C. 2923.12(A)(2) is satisfied by possession, and possession involves control over the gun. *See, e.g., Haslam*, 7th Dist. No. 08 MO 3, 2009-Ohio-1663, ¶ 41 (to "have" a firearm, the defendant must have had actual or constructive possession). *See* R.C. 2925.01(K) (possess is defined as having control over a thing). Viewed in the light most favorable to the prosecution, a defendant's statement that he handled a firearm at a party is sufficient evidence he had control over the firearm.

**{¶22}** In sum, there was adequate evidence produced to allow the trier of fact to find the elements of having a weapon while under disability were proven beyond a reasonable doubt. For all of the above reasons, Appellant's sufficiency argument is overruled.

<u>WEIGHT OF THE EVIDENCE</u>

**{¶23}** On the topic of weight of the evidence, Appellant's second assignment of error provides in pertinent part:

"Evidence presented is * * * against the manifest weight of the evidence to support a conviction of Having Weapons While Under Disability * * *."

**{¶24}** Even if a trial court's judgment is sustained by sufficient evidence, a defendant can argue the judgment is against the weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Id.* It is not a question of mathematics but depends on the effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion, whereas sufficiency involves the burden of production. *Id.* at 390 (Cook, J. concurring).

**{¶25}** The appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220 (2011), citing *Thompkins*, 78 Ohio St.3d at 387. This discretionary power

of the appellate court is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶26}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶27}** The jury chose to disbelieve the testimony of Appellant's half-brother when he testified Appellant pointed a .40 caliber gun at the victim on the front porch just before the victim was shot. However, his testimony was not incredible. Furthermore, as aforementioned, the jury's verdict was not akin to finding Appellant never possessed a gun that night. Appellant's own statement to police admitted he handled a .40 caliber firearm the night of the shooting at an earlier gathering. (Appellant indicated the males were "showboating" for the females.)

**{¶28}** In any event, Appellant chose not to have the charge of having a weapon while under disability tried to the jury. The jury's verdict on aggravated murder, murder, and aggravated robbery did not bind the trial court's independent weighing of the evidence related to the offense, which Appellant elected to have tried to the bench. *See, e.g., Stevens*, 8th Dist. No. 103516 at ¶ 3, 5, 18, 27 (where the jury acquitted the defendant of charges involving a weapon, the trial court's finding of guilt for having a weapon while under disability was not contrary to the manifest weight of the evidence); *State v. Page*, 10th Dist. No. 11AP-466, 2012-Ohio-671, ¶ 11 (upholding the trial court's decision finding the defendant guilty of having a weapon while under disability where the jury found him not guilty of aggravated

robbery, attempted murder, and felonious assault); *Morris*, 8th Dist. No. 94923 at ¶ 14 ("both the jury's and trial court's interpretations of the evidence are reasonable").

**{¶29}** In a similar situation while discussing weight of the evidence, the Eighth District reasoned: "The trial court and the jury are two independent triers of fact in this case. The fact that their conclusions differ is not relevant. The fact that the trial court reached a guilty verdict before the jury reached a not-guilty verdict actually suggests that neither side was unduly influenced by the other." *Brown*, 8th Dist. No. 89754 at ¶ 23. *See also Smith*, 10th Dist. No. 14AP-33 at ¶ 32-37.

**{¶30}** After reviewing the entire record, we conclude this is not "the exceptional case" where the evidence weighs so heavily against the conviction that we are compelled to intervene. The trial court did not clearly lose its way and create a manifest miscarriage of justice in its weighing of the evidence (and reasonable inferences to be drawn therefrom) or in its consideration of witness credibility. Appellant's weight of the evidence argument is overruled.

## SENTENCING

**{¶31}** Appellant's first assignment of error, which we are addressing last, provides:

"Appellant's sentence is both contrary to law and an abuse of discretion as the trial court failed to make any of the findings required by R.C. 2929.12 prior to imposing the maximum sentence allowed by law."

**{¶32}** Appellant was convicted of having a weapon while under disability, a third-degree felony, and sentenced to the maximum sentence of 36 months in prison. *See* R.C. 2929.14(A)(3)(b); R.C. 2923.13(A)(2),(B). At the time of the offense, the maximum sentence was five years. *See* Former R.C. 2929.14(A)(3). Appellant received the benefit of the sentencing amendments which lowered the maximum sentence for most third-degree felonies. *See* 2011 H.B. 86 (eff. 9/30/11).[3] *See also*

---

[3] This is the same statute containing the revival of consecutive sentence findings. These findings were originally excised by the Ohio Supreme Court in *Foster*, but the Court subsequently ruled consecutive sentence findings would be permitted upon future legislative reenactment. *See State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶ 36, 39 (2010), applying *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). The legislature did not reenact the requirement of reasons in support of consecutive sentence findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 4, 37. As explained further infra, maximum sentence findings were not reenacted. *See* R.C. 2929.14; *State v. Green*, 7th Dist. No. 14 BE 0055, 2016-Ohio-4915, ¶ 116.

R.C. 1.58 ("If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.").

{¶33} Although the text of the Appellant's assignment of error mentions the abuse of discretion standard of review, he thereafter recognizes this standard no longer applies to felony sentencing appeals. The Ohio Supreme Court held the plain language of R.C. 2953.08(G)(2) prohibits the application of the abuse of discretion standard to felony sentencing issues. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10, 16. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1, applying R.C. 2953.08(G)(2). In addition to being the standard for review on the findings required by certain statutory sections identified in R.C. 2953.08, this is also the standard for review regarding the court's consideration of the factors in R.C. 2929.11 and 2929.12. *Id.* at ¶ 23.

{¶34} The sentencing entry referred to the purposes of sentencing and cited R.C. 2929.11. Division (A) of this statute explains the overriding purposes of felony sentencing are to protect the public from future crime by the defendant and others and to punish the defendant using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on government resources. R.C. 2929.11(A). When considering the purposes of sentencing under R.C. 2929.11, a specific finding need not be placed on the record by the court. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31.

{¶35} In determining the most effective way to comply with the purposes and principles of sentencing, R.C. 2929.12(A) instructs the felony sentencing court to consider the seriousness factors set forth in divisions (B) and (C) and the recidivism factors set forth in divisions (D) and (E). Appellant contends the court failed to make findings under R.C. 2929.12.

{¶36} "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite

consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). This court has repeatedly stated that R.C. 2929.12 does not require the sentencing court to make specific findings regarding the seriousness and recidivism factors at the sentencing hearing or in the sentencing judgment entry. *See, e.g., State v. Taylor*, 7th Dist. No. 15 MA 0078, 2016-Ohio-1065, ¶ 14; *State v. Henry*, 7th Dist. No. 14 BE 40, 2015-Ohio-4145, ¶ 22. *See also State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 42 (R.C. 2929.12 instructs the court to "consider" the statutory factors; there is no mandate for judicial fact-finding within this general guidance statute).

**{¶37}** Where the record is silent, we employ a rebuttable presumption the sentencing court considered the seriousness and recidivism factors. *State v. Parsons*, 7th Dist. No. 12 BE 11, 2013-Ohio-1281, ¶ 12, citing *State v. James*, 7th Dist. No. 07CO47, 2009-Ohio-4392, ¶ 38–51 (explaining the history of the rule in detail). Therefore, if the court does not express its consideration of the R.C. 2929.12 factors, then we presume the court did so and followed the statutory guidelines, unless the record affirmatively shows otherwise or the sentence is strikingly inconsistent with the factors. *Id.*

**{¶38}** Appellant's claim the trial court failed to consider the seriousness and recidivism factors is without merit. The trial court expressly declared at the sentencing hearing: "the court has considered the factors under R.C. 2929.12 (B), (C), (D) and (E) * * *." The court also evinced its consideration of the factors by setting forth various findings. The court referred to Appellant's prior juvenile adjudications and adult convictions and his failure to respond favorably to past sanctions. (Tr. 751-752). These are recidivism factors relevant to subdivisions (D)(2), (D)(3), (E)(1), and (E)(2) of R.C. 2929.12. The court also said Appellant had been under sanction or post-release control. (Tr. 752). *See* R.C. 2929.12(D)(1) (under sanction at the time the offense was committed).

**{¶39}** Related to seriousness, the court expressed a belief Appellant committed the worst form of the offense, adding "the defendant was involved in a course of criminal conduct that culminated in the death of another person and participated with other people." (Tr. 751). Appellant takes issue with this latter

finding using the following reasoning. First, he claims the court was required to make one of three findings in order to impose a maximum sentence: the offender committed the worst form of the offense; the offender poses the greatest likelihood of recidivism; or the offender is in a certain class of major drug offenders or repeat violent offenders. He complains no maximum sentence finding was made in the sentencing entry. Then, he contends the court was required to give its reasons in support of its maximum sentence finding, citing R.C. 2929.19. Factually, he concludes the court's reasoning in support of a maximum sentence was invalid because the jury found him not guilty of aggravated murder, murder, and aggravated robbery.

{¶40} As the state points out, a sentencing court is no longer required to make special findings or provide reasons in support of those findings in order to impose a maximum sentence. *See State v. Green,* 7th Dist. No. 14 BE 0055, 2016-Ohio-4915, ¶ 116. The Supreme Court specifically severed and excised former R.C. 2929.14(C) as it required judicial fact-finding prior to the imposition of a maximum sentence and the related requirement in former R.C. 2929.19(B)(2) which required reasons to support the findings. *Foster*, 109 Ohio St.3d 1 at ¶ 97, 99, 100, syllabus at ¶ 1-2. (Subsequently, the legislature formally eliminated the provisions on maximum sentence findings and reasons from the statutes.) Therefore, the court was not required to make statutory maximum sentence findings or provide reasons in support to impose a sentence within the statutory range for the offense.

{¶41} As to Appellant's issue with one of the seriousness considerations provided by the sentencing court, a sentencing judge is entitled to rely on the trial transcript in evaluating the defendant and the nature and circumstances of the offense. *State v. Ballard*, 7th Dist. No. 08 CO 13, 2009-Ohio-5472, ¶ 3, citing *State v. Clay*, 7th Dist. No. 08 MA 2, 2009-Ohio-1204, ¶ 176. A sentencing court can consider inadmissible evidence as the Rules of Evidence do not apply to sentencing. *See* Evid.R. 101(C)(3). Furthermore, it is "well established" that a sentencing court may consider facts introduced at trial relating to other charges, even if the defendant has been acquitted of those charges. *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991). *See also United States v. Watts*, 519 U.S. 148, 153-156, 117

S.Ct. 633, 136 L.Ed.2d 554 (1997) (a jury verdict is not a finding of any fact, and the sentencing court may consider evidence adduced in a trial that resulted in an acquittal); *State v. Donald*, 7th Dist. No. 08 MA 154, 2009-Ohio-4638, ¶ 42-44. "Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant." *State v. Ramey*, 2d Dist. No. 2007 CA 130, 2009-Ohio-425, ¶ 14, quoting *U.S. v. Sweig*, 454 F.2d 181, 184 (2d Cir.1972).

{¶42} On this topic, it has been pointed out:  although the standard of proof in the criminal trial is proof beyond a reasonable doubt, this standard does not apply to sentencing.  *Donald*, 7th Dist. No. 08MA154 at ¶ 45, citing *Watts*, 519 U.S. at 155. *See also State v. Huber*, 2d Dist. No. 2005 CA 45, 2006-Ohio-3514, ¶ 14-17.  The trial court's mention that Appellant was involved with others whose course of conduct culminated in a death was not the sole basis for the court's sentence.  Appellant's prior criminal history was a consideration as was his commission of the offense while under a sanction for another offense.

{¶43} The court imposed the sentence consecutive to a prior sentence Appellant was already serving.  In doing so, the court made the following consecutive sentence findings:  (1) "consecutive sentences are necessary in order to protect the public and/or to punish the offender"; (2) "and not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public"; and (3) "the offense was committed while the offender was awaiting trial, sentencing, and was under sanction or was under postrelease control prior to the offense" and/or "[t]he offender's history of criminal conduct demonstrates that the consecutive sentences are necessary to protect the public from future crime by the offender."  (Tr. 751-752).  *See* R.C. 2929.14(C)(4)(a),(c).  These findings relate to various factors within R.C. 2929.12 as well.  For all of the foregoing reasons, Appellant's sentence is upheld.

{¶44} However, the matter is remanded for a nunc pro tunc entry for two reasons.  As aforementioned, the trial court imposed the sentence in this case to run consecutively to an Ohio felony sentence Appellant was already serving.  The statutory presumption of concurrent sentences applies to two sentences being imposed at once and to a new sentence where another Ohio felony sentence is

already being served. *See* R.C. 2929.41(A). Consequently, consecutive sentence findings are required where a sentence is imposed consecutively to a prior sentence. *See* R.C. 2929.41(A), citing R.C. 2929.14(C). Consecutive sentence findings must be made at the sentencing hearing and in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29, 37 (but the court need not provide reasons). In the prior paragraph, we quoted the consecutive sentence findings made at the sentencing hearing in accordance with R.C. 2929.14(C)(4). However, the trial court did not reiterate the consecutive sentence findings in the sentencing entry. The proper remedy is to remand for a nunc pro tunc entry. "A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Bonnell*, 140 Ohio St.3d 209 at ¶ 30.

**{¶45}** Furthermore, the sentencing entry provides Appellant "is to serve a term TWELVE (12) MONTHS in prison, of which ZERO (0) is mandatory * * * for a TOTAL PRISON TERM OF THIRTY (36) MONTHS." Two typographical errors are apparent: the reference to 12 months, and the lack of the word "SIX" after the word "THIRTY" and before the numerical "(36)." Appellant's brief acknowledges he was sentenced to a maximum sentence of 36 months in prison. These issues may cause confusion for agencies relying on the entry. In issuing the nunc pro tunc entry, the trial court is instructed to fix these clerical errors by: (a) eliminating the reference in the entry to "TWELVE (12) MONTHS"; and (b) changing "THIRTY (36) MONTHS" to "THIRTY-SIX (36) MONTHS."

Supplemental Filing

**{¶46}** Oral argument was originally set for November 16, 2016, but was reset for January 18, 2017 due to scheduling conflicts. On December 12, 2016, Appellant's attorney filed notice of intent to rely on supplemental authority and attached the Ohio Supreme Court's case of *State v. Hand*, __ Ohio St.3d __, 2016-Ohio-5504, __ N.E.3d __ (released August 25, 2016). At oral argument, counsel argued it violated due process to use Appellant's juvenile adjudication as an element

of having a weapon while under disability. The state responded by pointing out other qualifying criteria for the disability element do not involve convictions obtained through a jury trial.

**{¶47}** In *Hand*, the Supreme Court held it was "a violation of due process to treat a juvenile adjudication as the equivalent of an adult conviction for purposes of enhancing a penalty for a later crime." *Id.* at ¶ 1. This holding was based upon the application of R.C. 2929.13(F)(6), which requires a mandatory prison term for a first or second degree felony if the defendant was previously convicted of a first or second degree felony. *Id.* at ¶ 3, 8. As R.C. 2929.13(F)(6) did not define the word "convicted," the lower courts resorted to R.C. 2901.08(A), which stated an adjudication as a delinquent child was a conviction for purposes of determining the offense to be charged and the sentence to be imposed.

**{¶48}** The Court discussed the civil nature of juvenile adjudications and the rehabilitative purpose of disposition in contrast to the adult criminal system with a more punitive goal. *Id.* at ¶ 13-14. The Court reviewed the protections afforded to juveniles, with the exception of the right to a jury trial. *Id.* at ¶ 19. Mr. Hand argued this lack of a jury trial right for juveniles was the reason why it violated due process to use his adjudication against him to require a mandatory sentence in a later adult prosecution. *Id.* at ¶ 20. The Court applied the United States Supreme Court's holding in *Apprendi*: "Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See also Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (expanded *Apprendi* to hold any facts increasing a mandatory minimum sentence must also be submitted to a jury and found beyond a reasonable doubt).

**{¶49}** The *Hand* Court opined the heart of the *Apprendi* exception (allowing a prior conviction to enhance a sentence) was based on the concept that the prior conviction involved the right to a jury trial. *Hand*, __ Ohio St.3d __, 2016-Ohio-5504 at ¶ 31. The Court concluded: "Because a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to

increase a sentence beyond a statutory maximum or mandatory minimum." *Id.* at ¶ 34. The juvenile adjudication therefore cannot be characterized as a prior conviction in order to enhance adult punishment by increasing the degree of or sentence for a subsequent offense. *Id.* at ¶ 35-37.

{¶50} As aforementioned, the parties stipulated to the admission of a certified copy of Appellant's adjudication judgment entry, and Appellant never raised an issue with the element involving a qualifying prior juvenile adjudication. In any event, Appellant's situation is distinguishable from *Hand*. The statute defining the offense of having a weapon while under disability provides in pertinent part:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

R.C. 2923.13(A)(2). All categories of the offense are felonies of the third degree. R.C. 2923.12(B).

{¶51} There is no indication the Supreme Court would extend the holding in *Hand* to the statute defining this offense, and this court refuses to do so. The case at bar does not involve increasing the degree of an offense or enhancing a penalty for an offense. Rather, a juvenile with a prior adjudication for an offense that would be a felony of violence if committed by an adult is prohibited from carrying a firearm until the disability is removed by operation of law or legal process. Applying *Hand* in such a case would essentially mean a prior juvenile offender could not be prohibited from carrying a firearm (after his community control is over).

{¶52} Finally, as the state pointed out, other statutory alternatives exist to establish the disability element of the offense of having a weapon while under disability, and many of these options encompass facts which were not subjected to a prior jury trial. *See* R.C. 2923.13(A)(2) (the person is under indictment for a felony offense of violence); (3) (the person is under indictment for a drug offense); (4) (the

person is drug dependent, in danger of drug dependence, or a chronic alcoholic); (5) (the person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to court order, or is an involuntary patient other than one who is a patient only for purposes of observation). Appellant's supplemental argument is overruled.

## CONCLUSION

**{¶53}** For all of the foregoing reasons: Appellant's conviction for having a weapon while under disability is affirmed; the imposition of a 36 month sentence is affirmed; but the matter is remanded with instructions to issue a nunc pro tunc entry, which clearly sets forth the sentence as 36 months as imposed at the sentencing hearing and which adds the consecutive sentence findings made at the sentencing hearing.

Donofrio, J., concurs.

DeGenaro, J., concurs.