[Cite as *State v. McMasters*, 2019-Ohio-1085.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAMES DEAN MCMASTERS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 BE 0055**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CR 184

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecutor*, Atty. J. Flanagan*, Chief Assistant Prosecutor, Courthouse Annex 1, 147 A. West Main Street, St. Clairsville, Ohio 43950 No Brief Filed, for Plaintiff-Appellee and

*Atty. John P. Laczko, LLC*, 3685 Stutz Drive, Suite 100, Canfield, Ohio 44406, for Defendant-Appellant.

Dated March 20, 2019

_____

**Robb, J.**

{¶1} Defendant-Appellant James Dean McMasters appeals after being convicted of involuntary manslaughter in the Belmont County Common Pleas Court. Appellant seeks vacation of his *Alford* plea. He claims the plea was not knowing, intelligent, and voluntary as there was not strong evidence of actual guilt in the record. He also challenges the imposition of the maximum sentence. For the following reasons, the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2} On June 7, 2017, two intruders were shot during a home invasion; one died. As Appellant was said to have instructed the intruders to break into his girlfriend's house in search of drugs, he was charged with murder, complicity to murder, aggravated burglary, and robbery. Specifically, the July 6, 2017 indictment set forth charges for: murder in violation of R.C. 2903.02(B) for causing the death of another as a proximate result of committing or attempting to commit an offense of violence; complicity to murder under this same division for soliciting or procuring, aiding or abetting, and conspiring; aggravated burglary in violation of R.C. 2911.11(A)(1) for trespassing in an occupied structure by force, stealth, or deception when another person (other than an accomplice) was present with purpose to commit any criminal offense along with an attempt or a threat to inflict physical harm; and robbery in violation of R.C. 2911.02(A)(2) for inflicting, attempting to inflict, or threatening to inflict physical harm on another while attempting or committing a theft offense or in fleeing immediately thereafter.

{¶3} The trial court granted Appellant's motion for transcripts of the recorded statements of four witnesses and his motion to memorialize plea negotiations with co-defendants. The court received letters purporting to be from various individuals, including co-defendants; the letters were file-stamped and placed in the case file. Upon the state's motion, the court released the original letters to the sheriff's office for investigation (substituting copies for the court's file).

Case No. 17 BE 0055

**{¶4}** Pursuant to a November 27, 2017 plea agreement, the state agreed to amend the murder count to involuntary manslaughter and dismiss the other three counts. Appellant pled guilty by entering an *Alford* plea to involuntary manslaughter in violation of R.C. 2903.04(A), a first degree felony. The state agreed to stand silent at sentencing and to refrain from bringing new charges such as forgery (of the letters to the court). A pre-sentence investigation was ordered. The court thereafter sentenced Appellant to the maximum term of 11 years in prison. Appellant filed a timely notice of appeal from the December 12, 2017 sentencing entry.

ASSIGNMENT OF ERROR ONE: <em>ALFORD</em> PLEA

**{¶5}** Appellant sets forth two assignments of error, the first of which contends:

"THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S ALFORD PLEA WHEN THAT PLEA WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY AND THEREFORE APPELLANT'S CONVICTION AND SENTENCE MUST BE VACATED."

**{¶6}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Appellant acknowledges the trial court's plea colloquy strictly complied with Crim.R. 11(C)(2)(c) by explaining and ensuring he understood the constitutional rights he was waiving. *See State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19-22 (strict compliance required as to all five constitutional rights).

**{¶7}** Crim.R. 11(C)(2)(a) requires the trial court to determine the defendant is entering the plea voluntarily, with understanding of the nature of the charge and the maximum penalty, and Crim.R. 11(C)(2)(b) involves the defendant's understanding of the effect of the plea and the court's ability to proceed to judgment and sentence upon acceptance of the plea. Appellant concedes the court substantially complied with the duty to ensure he understood the non-constitutional aspects of these subdivisions. *See State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990) (substantial compliance with non-constitutional rights portion of rule). *See also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32 (partial compliance requires a showing of prejudice).

**{¶8}** As Appellant points out, he acknowledged at the plea hearing: he was entering the plea voluntarily with no promises, threats, or coercion; he was represented by counsel and satisfied with his advice; he understood the nature of the charge and the maximum penalty; and he was motivated to enter the compromise in order to avoid additional and greater sentences if convicted as charged.[1] Nevertheless, Appellant contests the acceptance of the *Alford* plea, claiming there was not "strong evidence" of his guilt or a "high probability of conviction" in order to demonstrate that his interests *required* him to enter the plea rather than take the case to trial.

**{¶9}** A standard guilty plea consists of a waiver of trial and an express admission of guilt; the express admission of guilt, however, is not constitutionally required. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The United States Supreme Court held a defendant can knowingly, intelligently, and voluntarily consent to be sentenced without a trial "even if he is unwilling or unable to admit his participation in the acts constituting the crime" and even he offers a "plea containing a protestation of innocence." *Id.* This became known as the "*Alford* plea."

**{¶10}** The *Alford* Court held such a plea can be accepted when "a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37. *See also State v. Post*, 32 Ohio St.3d 380, 387, 513 N.E.2d 754 (1987). In other words, there is no constitutional error if the state demonstrated a "strong factual basis for the plea" and the defendant "clearly expressed desire to enter it despite his professed belief in his innocence * * *." *Id.* at 38. *See also id.* at 37-38 ("When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, * *

---

[1] Appellant sets forth five factors from *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus, where it was concluded a guilty plea is voluntary and intelligent where the record affirmatively shows: (1) the plea was not the result of coercion, deception, or intimidation; (2) counsel was present; (3) his advice was competent in light of the circumstances; (4) the defendant understood the nature of the charges; and, (5) he was motivated by a desire to seek a lesser penalty or fear of the consequences of a jury trial. Although *Alford* was discussed in *Piacella* in response to the defendant's contention that her post-sentence plea withdrawal motion should have been granted due to lacking evidence, we note there is no indication *Piacella* involved an *Alford* plea. We also note the case predated the enactment of Ohio's Criminal Rules and is not cited in more recent Ohio Supreme Court cases discussing *Alford*.

* its validity cannot be seriously questioned.").   In a footnote, the Court cited with favor state and federal cases which "properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea * * * and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence."  *Id.* at fn. 10 (noting Fed.Rule Crim.Proc. 11 prohibits a court from entering judgment on any guilty plea "unless it is satisfied that there is a factual basis for the plea").

**{¶11}**  Appellant agrees the state articulated sufficient facts to satisfy the elements for involuntary manslaughter but contends there is no indication he intelligently concluded his interests *required* him to plead guilty to involuntary manslaughter and the record did not contain *strong* evidence of his guilt.  However, the trial court inquired into Appellant's decision to enter the *Alford* plea, Appellant clearly expressed a desire to enter the plea, and the record permitted the court to resolve any conflict between the waiver of trial and the claim of innocence (which was made only through the labeling of the plea as an *Alford* plea).

**{¶12}**  Specifically, the court inquired whether Appellant was entering a guilty plea "under the case of *North Carolina v. Alford,* as a means of possibly limiting the penalty that you could receive if you're found guilty by a jury of the charges contained in the original indictment?"  When Appellant said he did not understand the question, the court explained:  "One of the reasons people are permitted to enter an *Alford* plea of guilty is because the consequences of going to trial on all of the charges in the indictment are much, much worse than the possible consequences of pleading guilty to the amended charge."  (Tr. 10).  Appellant replied in the affirmative to this question and to the next question asking, "Is that one of the reasons you're doing this?"  (Tr. 10-11).  Appellant also agreed with the inquiry:  "Just again, to make sure we're clear, you believe that the consequences of going to trial are too great, when compared to the consequences under the Plea Agreement, as far as limiting the possible penalty?"  (Tr. 11).

**{¶13}**  The court continued:  "Are you entering this plea as a compromise?  In other words, the charges are amended down to one charge of involuntary manslaughter, and the State is agreeing not to prosecute you for whatever else, other charges, they believe that the evidence would show; do you understand that?"  (Tr. 11).  Appellant indicated he

understood, and defense counsel voiced that he spent time going over the meaning of an *Alford* plea with Appellant. (Tr. 11-12). Appellant also said he understood when the court explained that even though he may not be admitting his guilt by the *Alford* plea, "you have to understand that I will find you guilty and treat you as if you are guilty of the amended charge if I accept the plea." (Tr. 12).

{¶14} When the court asked the state "if there was a factual basis for the record, to substantiate the proof of guilt of the amended charge," the state proffered: the defendant conspired with others to remove drugs from an occupied structure owned by his girlfriend; he was not present during the offense but was the lead orchestrator or co-orchestrator of the events; two perpetrators went to the girlfriend's residence to commit aggravated burglary; both perpetrators were shot by an individual present at the residence; and case law supports a murder charge under R.C. 2903.02(B) for a death during an aggravated burglary even if the death was a perpetrator and even where the defendant was not present during the burglary but helped organize it. (Tr. 12-13). Appellant then answered affirmatively when the court asked if he believed "entering a plea to the amended charge is in your best interests, based on everything else we have discussed today?" (Tr. 13-14).

{¶15} The state agreed to amend the murder charge (and dismiss the robbery and aggravated burglary charges) in exchange for Appellant's guilty plea to involuntary manslaughter, which has the elements of causing the death of another as a proximate result of committing or attempting to commit a felony. R.C. 2903.04(A). According to the state, a perpetrator of a burglary was shot and killed during the offense which was at least co-orchestrated by Appellant and cited law in support of holding the complicitor liable for the homicide of another complicitor (which was not challenged below or on appeal). A court considering whether to accept the plea could reasonably find the state's recitation "substantially negated [any] claim of innocence"; the recitation "further provided a means by which the judge could test whether the plea was being intelligently entered * * *." *See Alford*, 400 U.S. at 37-38.

{¶16} In summarizing the colloquy and evaluating this issue, the trial court emphasized the defense did not contest that the state's explanation of evidence substantiated the proof of his guilt. (Tr. 14). Defense counsel waived the lack of

indictment, opined involuntary manslaughter was a lesser included offense of the murder charge, and *specifically agreed* the state's recitation was "sufficient for the Court to accept the plea." (Tr. 3, 13). Appellant then agreed the plea agreement was in his best interest and had already advised the court that a rejection of the plea agreement and trial on the indicted charges carried consequences and resulting penalties that were too great compared to the consequences of entering a plea to the amended charge of involuntary manslaughter. Appellant confirmed that his attorney reviewed all of the evidence with him. Discovery was conducted, a preliminary hearing had been held, a request was made as to the transcript, and a motion was filed discussing the statements of co-defendants and other witnesses. Defense counsel disclosed that he fully advised Appellant about the *Alford* plea, and Appellant signed the plea agreement captioned as an *Alford* plea before the plea hearing commenced.

**{¶17}** Appellant conveyed to the trial court a "clearly expressed desire to enter" the plea. *See Alford*, 400 U.S. at 38. He expressed the belief that the plea to the amended charge was in his "best interests" based on the record, (Tr. 14), was akin to expressing a conclusion "that his interests require entry of a guilty plea." *See id.* at 37. We conclude the trial court sufficiently ensured the plea to involuntary manslaughter was knowingly, voluntarily, and intelligently made in order to secure the dismissal of the indicted charges of murder, robbery, and aggravated burglary (and to ensure additional charges for forgery were not brought). In accordance, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: SENTENCING</u>

**{¶18}** Appellant's second assignment of error provides:

"THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THE MAXIMUM POSSIBLE PRISON TERM OF INCARCERATION PURSUANT TO *ALFORD* PLEAS WHERE THE RECORD DID NOT SUPPORT THE SENTENCE AND THE SENTENCE WAS CONTRARY TO LAW CONSTITUTING AN ABUSE OF THE TRIAL COURT'S DISCRETION IN CONTRAVENTION OF R.C. 2929.11 AND R.C. 2953.08."

**{¶19}** In arguing the trial court did not properly apply R.C. 2929.11 and R.C. 2929.12, Appellant states the court failed to weigh the mitigating arguments set forth by the defense at sentencing, including: Appellant was not present at the event during which

two perpetrators were shot; the investigators believed Appellant did not wish harm on anyone during the event; and other causes contributed to the death, including the shooter's choice to fire on the burglars and the decedent's choice to participate in the burglary. (Sent.Tr. 5-7). Appellant concludes the sentencing court was not presented with "a maximum sentence case" and sets forth arguments on abuse of discretion as well as clear and convincing evidence.

**{¶20}** The Ohio Supreme Court concluded the plain language of R.C. 2953.08(G)(2) prohibits the application of the abuse of discretion standard when reviewing a felony sentence. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10, 16. Instead, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. In addition to being the standard of review when evaluating the findings required by the statutory sections specifically identified in R.C. 2953.08, this is also the standard of review regarding the trial court's consideration of the factors in R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 23; *State v. Hudson*, 2017-Ohio-645, 85 N.E.3d 371, ¶ 33 (7th Dist.).

**{¶21}** Appellant acknowledges the court had no duty to make findings or give reasons as to why a maximum sentence was imposed. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *See State v. Saunders*, 7th Dist. No. 17 JE 0015, 2018-Ohio-3612, ¶ 9. When exercising this discretion in felony cases, the statutory principles of sentencing found in R.C. 2929.11 and R.C. 2929.12 must be considered. *Id.* at ¶ 9, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. Yet, the court is not required to place a specific finding on the record when considering the principles and purposes of sentencing under R.C. 2929.11. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. Moreover, "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

**{¶22}** Although it was not required to do so, the trial court declared (at the sentencing hearing and in the judgment entry) that it considered the purposes and principles of sentencing and the seriousness and recidivism factors, and the court made findings as to various factors. *See State v. Hardy*, 7th Dist. No. 14 MA 30, 2015-Ohio-2206, ¶ 13 (even in the case of a completely silent record, where there was no mention of the factors in the entry or at the hearing, it will be presumed the trial court considered the relevant factors in the absence of an affirmative showing that it failed to do so unless the sentence is strikingly inconsistent with the applicable factors). The issue here is the trial court's application of the statutes to impose a maximum sentence.

**{¶23}** R.C. 2929.11(A) mandates that sentencing courts be guided by the overriding principles of felony sentencing, including "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). A felony sentence shall be reasonably calculated to achieve the purposes of felony sentencing corresponding to the seriousness of the conduct and its impact upon the victim and consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B).

**{¶24}** In exercising discretion to determine the most effective way to comply with the purposes and principles of sentencing, R.C. 2929.12(A) instructs the felony sentencing court to consider the seriousness factors set forth in divisions (B) and (C), the recidivism factors set forth in divisions (D) and (E), the military service factors set forth in (F), and any other pertinent factors. The trial court considered the presentence investigation which included pertinent information. A court can consider arrests reflected in a presentence investigation report and the charges for which a defendant was originally indicted (which included murder, aggravated burglary, and robbery). *See State v. Esmail*, 7th Dist. No. 13 CO 35, 2014-Ohio-2297, ¶ 11 ("it is settled law that a sentencing judge can take into account facts relating to other charges, even charges that have been dismissed or which resulted in an acquittal"), citing *United States v. Watts*, 519 U.S. 148,

117 S.Ct. 633, 136 L.Ed.2d 554 (1997), and *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991).

**{¶25}** The following statutory factors indicate the offender is less likely to recidivate: no prior juvenile adjudications or criminal convictions; the offender had led a law-abiding life for a significant number of years before this offense; the offense was committed under circumstances not likely to recur; and genuine remorse was shown. R.C. 2929.12(E)(1)-(5). Regarding the factors making recidivism likely, the trial court referred to the following prior convictions: four prior felony convictions (involving delivery of drugs); resisting arrest; complicity; attempted breaking and entering; criminal trespass (twice); and disorderly conduct. *See* R.C. 2929.12(D)(2). As to the felonies, the court pointed out Appellant violated probation and was ordered to serve two to ten years in a West Virginia prison. *See* R.C. 2929.12(D)(3) (failure to respond favorably to sanctions previously imposed for a criminal conviction). The court believed there was a pattern of drug abuse related to the offense which Appellant failed to acknowledge. *See* R.C. 2929.12(D)(4). The court also found Appellant showed no genuine remorse. *See* R.C. 2929.12(D)(5). The court concluded there was a likelihood of recidivism.

**{¶26}** As for seriousness, the following factors indicate the offender's conduct is less serious: the victim induced or facilitated the offense; the offender acted under strong provocation; the offender did not cause or expect to cause physical harm to any person or property; and substantial grounds mitigate the offender's conduct. R.C. 2929.12(C)(1)-(4). Appellant argues the court erroneously concluded there were no factors making the offense less serious. The defense made mitigation arguments about additional causes or factors and Appellant's decision not to accompany those he instructed. The trial court discounted the mitigation value of these grounds and noted Appellant's instigation of the tragedy.

**{¶27}** At sentencing, the defense also pointed to R.C. 2929.12(C)(1) and suggested the victim induced or facilitated the offense. Clearly, the trial court understood the decedent, whose death was proximately caused by a burglary organized by Appellant, was one of the perpetrators of Appellant's scheme. The court found this argument was outweighed by the factors in division (B), which indicate the conduct was more serious,

concluding the "factors decreasing seriousness are greatly outweighed by those increasing seriousness." (Sent.Tr. 11).

**{¶28}** As to the factors making the offense more serious, the court pointed out the offender's relationship with all involved facilitated the offense. *See* R.C. 2929.12(B) (any other relevant factor), (B)(6) (relationship with the victim facilitated the offense). Appellant encouraged his brother to assist in the burglary and others were recruited as well. It was explained the home owner had been Appellant's girlfriend and the shooter was a nephew. Considering this familiarity and information in the presentence investigation, weight can be given to Appellant's awareness of the gun in the target residence and the foreseeability of the other causes cited by defense counsel. As for additional seriousness factors, the court pointed out one of Appellant's accomplices died and the other was seriously injured. *See* R.C. 2929.12(B)(2). The court also found Appellant committed the offense as a part of an organized criminal plan. *See* R.C. 2929.12(B)(7). The court characterized Appellant's decision as incomprehensible.

**{¶29}** We do not find "by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *See Marcum*, 146 Ohio St.3d 516 at ¶ 1. This assignment of error is overruled. For the foregoing reasons, the trial court's judgment is affirmed.

Waite, P.J., concurs.

D'Apolito, J., concurs.

Case No. 17 BE 0055

—————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**